UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| RONALD M. CHACON,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | Case No. EDCV 09-0851 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security ("SSI") income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed an application for SSI benefits on April 18, 2007, alleging that he had been disabled since August 1, 2006 due to obesity, poorly controlled diabetes mellitus, sensory peripheral neuropathy in the lower extremities, degenerative arthritis of the lumbar spine with back pain, and sciatic nerve damage. [JS 1; Administrative Record ("AR") 11]. Plaintiff's application was denied initially and upon reconsideration. [JS 1; AR 9]. Plaintiff requested an administrative hearing, which was conducted before an administrative law judge (the "ALJ") on December 29, 2008. [AR 17]. Plaintiff, who was represented

by an attorney, testified on his own behalf during the hearing. [AR 19-24]. Testimony also was received from Dr. Landau, a medical expert, and Michael Rinehart, a vocational expert. [AR 24-49].

On March 9, 2009, the ALJ issued a written decision denying plaintiff's application for benefits. [AR 9-16]. The ALJ found that plaintiff had the following severe impairments: obesity, poorly controlled diabetes mellitus, type II, with sensory peripheral neuropathy in the lower extremities, and degenerative arthritis of the lumbar spine with back pain. [AR 11]. The ALJ determined, however, that plaintiff's impairments, either singly or in combination, did not meet or equal an impairment included in the Listing of Impairments. [AR 11]. See 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to perform light work, except that he can stand or walk for two hours and sit for six hours during an eight-hour work day; occasionally bend or stoop; climb ramps and stairs but not ropes, ladders, or scaffolds; and cannot balance or work at heights.[AR 12]. The ALJ found that plaintiff had no past relevant work. [AR 15]. Based on the testimony of the vocational expert, the ALJ determined that the plaintiff could perform alternative jobs that exist in significant numbers in the national economy. [AR 15]. The ALJ therefore concluded that the plaintiff was not disabled at any time up to the date of his decision. The Appeals Council denied plaintiff's request for review. [AR 1].

**Background**

Plaintiff was born in 1964, and he was 45 years old when the ALJ issued his decision. [AR 104]. Plaintiff has completed 10 years of education, having dropped out of high school in the 11th grade. [AR 22]. He previously worked as a bricklayer for about three weeks in 1997. [AR 20-21].

Plaintiff has been receiving treatment for lower back pain since 2005. [AR 253]. An x-ray in October 2005 revealed Grade-1 spondyloliesthesis,[1] including moderate degenerative changes throughout the lumbar spine. [AR 253]. The examining doctor concluded that the plaintiff suffered from moderate degenerative arthritis. [AR 253]. An ultrasound performed in March 2006 indicated that the plaintiff had degenerative joint disease in both his right knee and shoulder. [AR 247-48]. In January 2007, in response

---

[1] Spondylolisthesis is "forward displacement (olisthy) of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar over the fifth, usually due to a developmental defect of the pars interarticularis." Payan v. Chater, 959 F.Supp. 1197, 1202 n.7 (C.D.Cal. 1996) (citing Dorland's Illustrated Medical Dictionary 1563 (28th ed. 1994)).

to plaintiff's continued complaints of lower back pain, plaintiff's treating doctor prescribed the pain reliever Norco (acetaminophen and hydrocodone) and methocarbamol, a muscle relaxant. [AR 241-42]. By January 2007, plaintiff's lower back pain had begun to migrate down his legs, leading his treating doctor to diagnose sciatica. [AR 242]. In April 2007, following plaintiff's complaints of foot pain, plaintiff's doctor x-rayed his feet and noted degenerative changes in the metatarsals of both feet. [AR 286-87]. Also in April 2007, plaintiff's doctor determined that diabetic neuropathy was causing the pain and burning sensations in plaintiff's legs. [AR 288]. Toward the end of 2007, plaintiff's treating doctor changed plaintiff's medications. The Norco prescription was continued, but methocarbamol was replaced with oxycodone and gabapentin (for neuropathy). [AR 135-36].

In 2005, plaintiff's treating doctor diagnosed plaintiff with diabetes mellitus, type II. [AR 260]. His doctor monitored plaintiff's diabetes with periodic blood tests. [AR 166-67, 174-75, 180, 182, 188, 271]. The blood tests indicated that plaintiff's diabetes was "out of control." [AR 150, 166-67, 174-75, 180, 182, 188, 271]. Plaintiff was prescribed medication to help control his diabetes beginning in 2005. [AR 249]. In 2007, plaintiff's doctor confirmed that plaintiff's diabetes was causing neuropathy in the lower extremities. [AR 288].

Between 2005 and 2008, plaintiff's weight increased from 157 pounds to 246 pounds. [AR 242, 255]. Plaintiff's doctor discussed plaintiff's weight and weight control with him in late-2007 and in mid-2008. [AR 269, 281]. During this same time frame, plaintiff was successfully treated for hepatitis C, high blood pressure, a skin rash, an upper respiratory infection, and a bladder stone. [AR 225-27, 242, 258-59, 275, 291].

In mid-2007, the plaintiff underwent a consultative examination at the Commissioner's request by internist Nicholas Lin, M.D. [AR 196-203]. Dr. Lin opined that plaintiff could frequently lift or carry 25 pounds and could sit for six hours in an eight-hour workday. [AR 201].

During the hearing, plaintiff testified that he suffers from constant pain in his lower back, legs, and feet, and has numbness in his feet and ankles. [AR 28-33, 36-38]. Plaintiff further testified to having constant pain in his neck, arms, and hands, and said that his hands frequently swell up. [AR 34-36].

Dr. Landau, the medical expert, testified that plaintiff is obese, has poorly controlled diabetes

mellitus complicated by neuropathy in the lower extremities, and has degenerative arthritis of the spine. [AR 24-25]. Dr. Landau opined that none of the plaintiff's impairments met or equaled a listed impairment. [AR 25]. Dr. Landau testified, however, that plaintiff's impairments would limit his ability to work. He opined that plaintiff could lift no more than 10 pounds frequently, sit for six hours, climb stairs but not ladders, and that plaintiff would need an air-conditioned, not excessively noisy work environment. [AR 25].

Michael Rinehart, the vocational expert, testified during the hearing that a hypothetical person with the limitations described by the ALJ could perform jobs available in significant numbers in the national economy. [AR 48-49].

### Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

### Statement of Disputed Issues

The disputed issues are: (1) whether the ALJ properly complied with SSR 96-7p regarding the type, dosage, effectiveness and side effects of plaintiff's medications; (2) whether the ALJ properly considered plaintiff's subjective symptoms; and (3) whether the ALJ posed a complete hypothetical question to the vocational expert.

///

///

**Discussion**

**Type, dosage, and side effects of prescribed medications**

Plaintiff contends that the ALJ improperly disregarded evidence that two of plaintiff's medications cause him to suffer drowsiness.

An ALJ must take into account the type, dosage, effectiveness, and adverse side effects of any medication when evaluating a claimant's subjective symptoms and ability to work. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3. In a December 2007 disability report, plaintiff wrote that Norco and oxycodone made him drowsy. [AR 143]. In three other undated disability reports, however, plaintiff said that he suffered no side effects from Norco or oxycodone, although he noted that oxycodone was "habit-forming." [AR 114, 126,136 ]. Moreover, plaintiff's medical records from Arrowhead Regional Medical Center and Westside Family Clinic do not document any complaints by plaintiff about drowsiness as a side effect, much less a disabling one. [AR 149-291]. Similarly, plaintiff gave a detailed history to Dr. Lin, the Commissioner's consultative examiner, but there is nothing in Dr. Lin's report about drowsiness or any other adverse effects from plaintiff's medications. [AR 196-201]. During the hearing, plaintiff was asked about his medications but did not mention any problems with side effects, even after his lawyer twice asked him if there was anything more he wanted the ALJ to know about the problems that prevented plaintiff from working. [AR 29-31, 38-40, 42, 45].

The ALJ did not err in failing to address the reference to drowsiness in plaintiff's December 2007 disability report. See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) (holding that the ALJ did not err in disregarding "passing mentions" of side effects in the medical records where "there was no evidence of side effects severe enough to interfere with [the claimant's] ability to work"); Hopkins v. Astrue, 227 Fed.App. 656, 657 (9th Cir. 2007) ("The ALJ was not obligated to consider [the claimant's] claim that his medication made him drowsy because [he] provided no evidence to support this claim other than a statement in his daily activities questionnaire.") (citing Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir.1985) ("[A] claimant's self-serving statements may be disregarded to the extent they are unsupported by objective findings.")).

**Credibility finding**

Plaintiff contends that the ALJ improperly considered plaintiff's subjective symptoms.

During the hearing, plaintiff testified that he has pain in his neck, arms, hands, low back, legs and feet. [AR 28-32]. He also said that he had numbness in his feet and ankles, and that his hands swell up on a regular basis, preventing him from gripping things. [AR 32-33, 35]. Plaintiff told Dr. Lin, the consultative examiner, that "he had been using a cane and a walker during prolonged ambulation for the last two years." [AR 196].

The ALJ is required to consider the claimant's subjective symptoms in making a severity determination if the claimant "first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)." SSR 96-3p, 1996 WL 374181, at *2. Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found that plaintiff does have medically-determinable severe impairments that "could reasonably be expected to cause some of the alleged symptoms," but that plaintiff's testimony regarding the "intensity, persistence and limiting effects" of the subjective pain symptoms were not credible. [AR 13]. The ALJ met his burden to provide specific, cogent reasons based on substantial evidence for disregarding plaintiff's subjective testimony.

The ALJ noted the absence of objective or clinical findings corroborating the alleged severity of plaintiff's subjective complaints. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). The ALJ highlighted the inconsistencies between plaintiff's subjective pain testimony and the 2007 consultative examination findings. Specifically, the ALJ pointed to the examining physician's observation that plaintiff had a normal gait and was able to get on and off the examining table without assistance. [AR 13, 200]. The ALJ noted that plaintiff had a "grossly normal range of motion" in the lower extremities, and mostly normal flexion in his back. [AR 13, 199]. The ALJ further noted that plaintiff was not tender to palpitation in the midline and paraspinal areas, or in his wrists and hands. [Id.]. The ALJ also noted that plaintiff's medical history did not reveal the presence of Heberden's or Bouchard's nodes.[2] [AR 13-14]. These inconsistencies call into question the "intensity, persistence and limiting effects" of plaintiff's pain testimony.

In addition, the ALJ rationally inferred that plaintiff's lack of work history detracted from his credibility. See 20 C.F.R. §§ 416.929(a), (c)(3) (stating the Commissioner will consider a claimant's efforts to work and prior work record in evaluating symptoms); SSR 96-7p, 1996 WL 374186 at *5 (stating that an adjudicator may consider evidence about the claimant's "prior work record and efforts to work"); e.g., Thomas, 278 F.3d at 958-59 (holding that the ALJ properly considered the claimant's "extremely poor work history" in discrediting her testimony); Schaal v. Apfel, 134 F.3d 496, 502 (2nd Cir. 1998) (explaining that a poor work history may be considered in evaluating a claimant's credibility). Plaintiff, who was 45 years old when the ALJ rendered his decision, had no work history prior to his alleged onset of disability in August 2006 except for three weeks' work as a bricklayer in 1997. [AR 14, 20-21]. Plaintiff testified that he lived with his father, who paid the bills. Plaintiff did some chores around the house. He said that he had tried looking for other work, but that no one would hire him. [AR 21-22]. The ALJ was entitled to conclude that plaintiff's lack of work history suggested a lack of motivation and reflected negatively on the credibility of his subjective complaints. The ALJ also was permitted to consider plaintiff's statement in a disability

---

[2] Such nodes link pathologically to the presence of degenerative joint disease, or osteoarthritis, in the hand joints. See *http://www.ncbi.nlm.nih.gov/pubmed/15677702* (last visited June 1, 2011).

report that he stopped working because he was incarcerated. [AR 12, 111]. Cf. Bruton v. Massanari, 268 F.3d 824, 826 (9th Cir. 2001) (holding that the ALJ properly considered, as part of his credibility assessment, evidence that the claimant stopped working because he was laid off, rather than due to his alleged impairments).

The ALJ permissibly interpreted other evidence in the record unfavorably to plaintiff. For example, the ALJ noted that plaintiff exhibited "significant muscle definition in his upper extremities" and no muscle atrophy, "bel[ying] his assertion that he does nothing." [AR 14]. A well-developed upper body could be consistent with plaintiff's alleged use of a cane for "prolonged" ambulation, but only if plaintiff could use the cane frequently enough to build muscle. Since plaintiff testified that pain prevented him from moving much or doing many activities, the ALJ rationally inferred that plaintiff's upper-body muscle definition and lack of atrophy were inconsistent with his subjective complaints. Cf. Osenbrock, 240 F.3d at 1166 (holding that the ALJ's reliance on the lack of medical evidence of disuse muscle atrophy constituted a clear and convincing reason, among others, for discrediting the claimant's "excess symptom" testimony); see generally Verduzco, 188 F.3d at 1090 ("Although this Court has disapproved of so-called 'sit and squirm' jurisprudence, the 'inclusion of the ALJ's personal observations does not render the decision improper.' The ALJ did not comment on the fact that [the claimant] failed to manifest external symptoms of his alleged pain at the hearing, but rather on the fact that [the claimant] did exhibit symptoms-symptoms that were inconsistent both with the medical evidence and with other behavior [he] exhibited at the hearing.") (quoting Morgan, 169 F.3d at 600; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985)).

The ALJ also relied on the fact that none of plaintiff's treating doctors noted in plaintiff's medical records that plaintiff is disabled or "has limitations greater than those determined in [the ALJ's] decision." [AR 14]. It is reasonable to assume that no doctor prescribed limited activity for plaintiff because his impairments did not warrant such a limitation. See Light, 119 F.3d at 792 (stating that the ALJ may consider information from physicians regarding the nature and effect of a claimant's symptoms).

Plaintiff told Dr. Lin that he had been using a walker and a cane for prolonged ambulation. [AR 196]. As the ALJ noted, however, Dr. Lin opined that plaintiff could stand and walk for up to four hours, and sit for six hours, during an eight-hour day, and he did not say that plaintiff needed a cane or a walker to

ambulate. [AR 196]. Dr. Lin's examination findings indicate that plaintiff does not have a medical need for a cane or walker. Plaintiff's gait was normal, he walked across the room without an assistive device, and he got in and out of the chair, and on and off of the examining table, without difficulty. [AR 196-200]. Plaintiff had a twenty-degree limitation of flexion in the back, but his range of motion in the back, upper extremities, and lower extremities was otherwise grossly normal bilaterally. Plaintiff's motor strength was intact bilaterally, and his sensory examination and reflexes were normal. [AR 199-200].

Plaintiff appeared at the hearing with a cane, but he did not mention it in his testimony, nor does he contend that any physician prescribed a cane or walker for him. The medical expert, Dr. Landau, did not indicate that plaintiff needed an assistive device to ambulate. Accordingly, the ALJ did not err in concluding that plaintiff did not require a cane or walker to meet the standing and walking demands specified in the ALJ's RFC finding.

For all of these reasons, the ALJ's credibility finding is supported by substantial evidence in the record and is free of legal error.

**Hypothetical question**

Plaintiff contends that the ALJ erred by supplying the vocational expert with a hypothetical question that did not take plaintiff's pain and walking difficulties into account.

The ALJ's job at the fifth step in the sequential evaluation procedure is to pose hypothetical questions that set out all of the claimant's impairments for the consideration of the vocational expert, who then "translates these factual scenarios into realistic job market probabilities . . . ." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of claimant that are supported by the record. Tackett, 180 F.3d at 1101; Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993). A vocational expert's response to a hypothetical question constitutes substantial evidence only if it is supported by the medical evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

The ALJ asked the vocational expert to

assume a hypothetical individual, a younger individual with limited education. And let's assume that ... the individual has no past relevant work experience. And let's assume the

individual can stand and walk two hours in an eight-hour day, [and] sit six hours in an eight-hour day with appropriate breaks, approximately every two hours. Can lift and carry 20 pounds occasionally, 10 pounds frequently. He could occasionally stoop and bend. He can climb stairs, but he cannot climb ladders, work at heights or balance. The work environment should be air-conditioned and not excessively noisy. . . . such as an office or the hearing room, something like that. Would there be occupations in the national economy that such an individual could perform?

[AR 48].

Plaintiff contends that the hypothetical question is deficient because fails to take into account plaintiff's subjective complaints of drowsiness and pain and his use of a cane for prolonged ambulation.

The ALJ's hypothetical question accurately describes plaintiff's limitations and restrictions that are supported by the record. For the reasons explained above, the ALJ permissibly disregarded the passing reference to drowsiness in one of plaintiff's disability reports. The ALJ also made a properly supported credibility finding rejecting the alleged severity of plaintiff's subjective symptoms and alleged need for a cane or walker.

The ALJ relied on Dr. Landau's hearing testimony to formulate the hypothetical question. [AR 25]. Dr. Landau testified that plaintiff had impairments consisting of obesity, diabetic neuropathy, and degenerative arthritis, and that those impairments would cause the limitations that the ALJ incorporated into his hypothetical question and ultimately, into his RFC finding. [AR 25, 48]. Dr. Landau's testimony was more favorable to plaintiff than opinions of the consultative examining physician or the non-examining state agency physicians, and there was no conflicting treating source opinion. Therefore, Dr. Landau's opinion constitutes substantial evidence supporting the ALJ's assessment of plaintiff's functional limitations in the hypothetical question and RFC finding.

///

///

///

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

June 15, 2011

_____
ANDREW J. WISTRICH
United States Magistrate Judge